UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALBERT CHAVARRIA | CIVIL ACTION |
| VERSUS | NO:   15-0993 |
| METROPOLITAN LIFE INSURANCE COMPANY | SECTION: "H" (4) |

## ORDER

Before the Court are two motions, **Defendant's Motion for Protective Order and FRCP Rule 26(c)(1) Certification (R. Doc. 38) and Plaintiff's Motion to Compel Discovery (R. Doc. 40)** The motions are opposed. R. Docs. 41, 43. The motion was heard on December 6, 2017. The parties returned for additional hearing on December 13, 2017, at which time they agreed to work on resolving their discovery issues and submit a letter to the Court detailing progress made in the dispute. On December 14, 2017, a joint letter was sent to the Court indicating what discovery issues had been resolved and what remained pending. Based on the information provided to the Court Plaintiff's Motion to Compel (R. Doc. 40) is **GRANTED IN PART** and **DENIED IN PART**. In addition, Defendant's Motion for Protective Order (R. Doc. 38) is **GRANTED IN PART** and **DENIED IN PART.**

### I.   Background

The instant litigation is a claim for ERISA long-term disability benefits. While the instant litigation was originally filed on March 31, 2015, the parties were involved in an earlier litigation involving disability benefits which was terminated before the District Court on December 5, 2014.

At the conclusion of the prior litigation, the District Court entered judgment in the Plaintiff's favor for the total amount of benefits due during the "own occupation" period of review for short-term disability. Plaintiff states that this ruling expressed no opinion as to the Plaintiff's entitlement to long-term disability benefits under the "any occupation" period. R. Doc. 1, p. 1.

Plaintiff states that on December 23, 2014, the Plaintiff provided MetLife with medical records and documentation supporting Plaintiff's entitlement to long-term disability benefits which included: (1) portions of the administrative record from the first lawsuit; (2) the Social Security Administration's decision awarding the plaintiff disability benefits; and (3) updated medical records. R. Doc. 1, pp. 1-2. According to the Plaintiff MetLife did not decide the case within the required 45 day period and then on July 23, 2015 plaintiff received a letter denying his long term disability benefits. R. Doc. 17.

The instant case was stayed while plaintiff appealed the denial of his benefits claim. R. Doc. 11. MetLife denied the appeal and plaintiff reopened the action by filing an amended complaint and alleging that MetLife's denial was an abuse of discretion because MetLife asserted a 24-month limitation on neuromuscular and muscoskeletal disorders, but the plaintiff's conditions are exceptions to those limitations. R. Doc. 17, p. 2. The plaintiff alleges that MetLife's denial was based on a conflict of interest arising from its responsibility to pay benefits if it determines plaintiff is entitled to them, no full and fair review was conducted, the denial was not based on substantial evidence, MetLife conducts these reviews rather than a 3rd party to maintain higher profit margins, and MetLife has failed to give the policy and plan a uniform construction and interpretation. R. Doc. 17, p. 2. The plaintiff seeks interest on all money that should have been paid, attorney's fees, and all benefits due in the past and future. *Id.* at p. 3.

On July 13, 2017, the District Court issued an ERISA case management order stating that within 60 days from its issuance the parties shall file a joint stipulation, statement, motion for summary judgement, or other dispositive motions as to whether ERISA governs the employee benefit plan, whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the plan, and whether ERISA

preempts all state law claims related to the employee benefit plan at issue. R. Doc. 26, p. 1. Within that same 60 days the defendant was required to file a complete copy of the employee benefit plan and summary plan description as well as a copy of the complete administrative record. *Id.* at p. 2. Within 90 days of that order the Plaintiff was required to file a statement regarding the completeness of the administrative record, including contentions that the record is incomplete in any way. *Id.* The District Court also noted that discovery was limited to 5th Circuit precedent unless a diligent review of facts leads a party to believe the scope should be expanded. *Id.*

On October 13, 2017, the District Court issues and ERISA briefing order stating that the parties had agreed that ERISA governs the employee benefit plan, the Plaintiff's claims are preempted by ERISA, and the administrators interpretation of the plan and determination of eligibility of benefits will be determined under the *abuse of discretion standard*. R. Doc. 35. The District Court noted that the benefit plan and administrative record had been filed and Plaintiff voiced no objection to its completeness. The Court further said the case was ready for submission on the administrative record and required the Plaintiff to file a brief by December 18, 2017. The Defendant's brief deadline is January 8, 2018, and Plaintiff's reply will be due January 18, 2018. *Id.* On December 13, 2017, the District Court issued an order modifying the deadlines in the case. R. Doc. 60. The Plaintiff's brief shall be filed by January 18, 2018, the Defendant's brief shall be filed by February 8, 2018, and the Plaintiff's reply brief shall be filed by February 19, 2018. *Id.* The District Court also extended the submission deadlines for a motion to suspend briefing or stay case and a motion for summary judgement as to the standard of review. *Id*.

The Plaintiff propounded its Set of Interrogatories and Requests for Production on October 16, 2017, three days after the District Court's ERISA briefing order. The plaintiff propounded fourteen (14) interrogatories on the Defendant. R. Doc. 40-2, pp. 5-8. Interrogatories Nos. 2-6

inquire as to the individuals who were responsible for the decisions to deny benefits, the doctors involved and their employment relationship to MetLife, their employment history, and salary and compensation information. Interrogatories Nos. 7-8 inquire as to the number of times in the past ten-years the reviewing medical providers conducted IMEs or other medical and vocational review of claimants, the total number of reviews, and the gross monetary compensation paid to the medical professionals by MetLife or any intermediary company. Interrogatory No. 9 requests internal policies, procedures, and manuals that existed at the time the claim was considered. Interrogatory No. 10 seeks policies regarding the recording of telephone conversation between MetLife and anyone else regarding disability claims. Interrogatories Nos. 11-13 inquire as to the number of times MetLife has retained companies to perform IMEs, peer review, or other medical review, the total number of times that occurred, and the gross compensation paid to the companies, and how many times those companies supported the findings of denial of long-term disability claims. Interrogatory No. 14 asks for each database used and maintained by MetLife in the administration and adjudication of claims.

The Plaintiff propounded twenty (20) requests for production ("RFP") on the defendant. RFP No. 1 asks for any surveillance video that was taken during plaintiff's claim. RFP Nos. 2-4 request the CV of Dr. Reva Klein, the employment contract, as well as performance evaluations for the past ten years. RFP No. 5 requests all performance evaluations for any claims personnel, medical professional, or vocational consultant who worked on the Plaintiff's short-term and long-term disability claims for the past ten years. RFP No. 6 asks for MetLife's written claims manuals or handbook, including guidelines protocols, policies etc., that detail how to proceed in making a determination in light of the exclusion at issue. RFP requests instructional or training documents available to MetLife claims personnel for the last ten years. RFP Nos. 8-9 asks for policies that

4

instruct personnel on the use of IMEs or peer review reports in the context of long-term disability claims. RFP No. 9 seeks policies instructing personnel on how to use in-house physicians for peer review vs. third party physicians. RFP No. 10 seeks policies regarding the hiring, firing, promotion, demotion, compensation, bonuses, and awards for employees. RFP 11 asks for the CV of any individuals who rendered a medical or vocational opinion. RFP No. 12-13 asks for performance evaluations of any who worked on this claim as well as documents reflecting compensation to those individuals. RFP No. 14 seeks reports or investigation of MetLife's practices by any Insurance Commissioner or regulatory authority within the last ten years. RFP No. 15 seeks contracts within third-party intermediaries hired to provide medical, occupational, or vocational analysis. RFP No. 16 requests the regulatory filings of MetLife in the State of Louisiana concerning the disability policy that is subject to the lawsuit beginning when the plaintiff's disability claim was submitted. RFP No. 17 seeks a document identifying each complaint filed against MetLife with an administrative agency over the past ten years by an insured who was denied benefits. RFP No. 18 requests financial records and reports (too numerous to list succinctly here as they are varied and different). RFP Nos. 19 and 20 seek MetLife's contract with Reliance Review Services and a copy of all correspondences between Reliance Review Services and MetLife with regards to the May 7, 2015 peer review performed by Anna Gilbertson.

The Defendant provided their very limited responses and objections to the Plaintiff's discovery requests on November 17, 2017. That same day MetLife filed its motion for the protective order (R. Doc. 38) from this discovery, which is currently pending before the Court. The Plaintiff filed his motion to compel this discovery (R. Doc. 40) on November 21, 2017. The Plaintiff argues that MetLife both determines whether someone is eligible for benefits, while also paying for those benefits, and this creates the type of conflict of interest that can be considered a

factor when determining whether a plan administrator has abused its discretion in deny benefits. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The defendant disputes that this conflict exists and that the discovery sought by the plaintiff will have no effect on the determination of the District Court whether the plan administrator abused their discretion.

The Court heard oral argument on the motions on December 6, 2017 at which time the Court began reviewing the contested Interrogatories and RFPs with counsel for the parties. After beginning to provide issue decisions as to each discovery request, the Court ordered that counsel for the parties were required to meet and come to an agreement regarding the contested discovery requests that would satisfy both parties. R. Doc. 51. The Court further ordered that if an agreement could not be reached an oral hearing was to be held on December 13, 2017. *Id.*

Counsel for the parties arrived on December 13 for the additional oral hearing at which time they conducted an informal conversation with the Court requesting an additional few days to work through the discovery requests. The Court agreed and on December 14, 2017, a joint letter detailing the progress that had been made was submitted to the Court. The letter indicates that the Plaintiff removed certain discovery requests and details where the parties reached agreement and where disputes still exist. The Court finds that no more briefing or oral argument is required and will evaluate the most updated version of the discovery requests and objections contained within the joint letter submitted to the Court.

## II. Standard of Review

### A. ERISA Discovery

The Fifth Circuit has found that the admission of evidence to resolve the merits of the coverage determination--i.e. whether coverage should have been afforded under the plan—is prohibited "unless the evidence is in the administrative record, relates to how the administrator

6

interpreted the plan in the past, or would assist the Court in understanding medical terms and procedures." *Crosby v. La. Health Serv. And Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (citing *Vega v. National Life Insurance Services, Inc.* 188 F.3d 287 (5th Cir.1999) (en banc), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008), *as recognized in Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 247 n. 3 (5th Cir. 2009)). According to the Court, a plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should have been afforded. *Id*. However, there is no prohibition against the admission of evidence to resolve other questions that may be raised in an ERISA action. *Id.*

The *Crosby* Court stated that in an ERISA action the claimant may question the completeness of the administrative record, whether the plan administrator complied with the procedural regulations of ERISA, and the existence and extent of a conflict of interest created by a plan administrators dual role in making benefits determinations as well as funding the plan. *Id.* The Court said there is no reason to limit the admissibility of evidence of those matters to the administrative record because evidence of those disputes may not be present in that administrative record. *Id.*

The *Crosby* Court further cautioned that in applying the standards the district court must monitor discovery closely because a review of ERISA benefits determination is analogous to an administrative agency decision. *Id*. The Court further stated:

> [D]istrict courts must be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b). For instance, a district court must limit otherwise permissible discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see Murphy v. Deloitte & Touche Grp. Ins. Plan,* 619 F.3d 1151, 1163 (10th Cir. 2010) (holding that all discovery, including discovery in ERISA matters, "is limited by Rule 26(b)(2), which protects against, *inter alia,* overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests").

7

*Id.* at 264.

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding relevant information to any claim or defense as long as it is nonprivileged. Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). In addition to alleging that the responding party has failed to properly cooperate with discovery, a motion to compel under Rule 37(a) must also "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

### B. Protective Order

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d

302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

### III. Analysis

The discovery dispute before the Court is in reference to both Interrogatories and Requests for Production ("RFP"). The Court will first address the RFPs and then will examine the Interrogatories.

#### A. Requests for Production

As was previously noted, the Plaintiff originally propounded twenty Requests for Production on the Defendant in this case. However, after the parties were ordered to work cooperatively to address the discovery issues a number of revisions and changes to the original requests were made as well as eliminating a number of previously propounded requests.

##### 1. RFP Nos. 1, 7, 8, 12, 16, 18, and 19

The joint letter sent to the Court via the Court's e-file box states that Plaintiff attempted to revise and narrow each request pursuant to the oral hearing on December 3, 2017. In addition, the letter states that the "Plaintiff removed certain requests and interrogatories entirely." *See* a*ttached*.

Upon a review of the letter containing the revised requests of the Plaintiff, it appears that seven of the twenty original RFPs were removed entirely. RFP Nos. 1, 7, 8, 12, 16, 18, and 19, are

no longer part of the Plaintiffs requests for production and therefore any motion to compel or for a protective order regarding these RFPs is now moot.

### 2. RFP Nos. 2, 4, 5, and 11

In the joint letter submitted to the Court RFP Nos. 2 and 11 are merged as indicated by the Plaintiff. These requests seek copies of the CV's of claims personnel, Reva Klein, M.D. as well as the CV of any other medical provider MetLife relied on in denying the Plaintiff's claim.

MetLife has agreed to the produce the CV of Reva Klein as well as Anna Gilbertson. However, MetLife objects to the production of the CVs of its claims personnel who were involved in the most recent denial and the appeal of denial of the Plaintiff's claim because it seeks information that s personal, confidential, and not relevant to the matters at issue in this lawsuit. In response, the Plaintiff states that these CVs will provide insight into whether MetLife has staffed its claims personnel with qualified professional to interpret medical information and make decisions regarding a claimant's livelihood.

In addition, RFP Nos. 4 and 5 are merged and seeks the performance evaluations of Reva Klein, M.D., as well of any claims personnel involved in the most recent denial and appeal of the denial of Plaintiff's disability benefits.

MetLife states that there are no performance evaluations of Reva Klein and that MetLife objects to the production of the performance evaluations of of claims personnel because that information is not relevant, is personal, and confidential. Plaintiff contends that these evaluations may contain insight into whether the claims personnel are motivated or evaluated by the financial conflict of interest and whether they complied with internal guidelines.

Other Courts have allowed the discovery of performance evaluations for those claims personnel who handled and reviewed a plaintiff's claims. *See Parish v. Aetna Life Ins. Co.*, No.

12-2315, 2013 WL 3974534, at *4 (E.D. La. Aug. 2, 2013); *See also Lapenter v. Hartford Life &Accident Ins. Co.*, No. 12-1422, E.D. La., Doc. #22. In those cases the court's found that the performance evaluations were discoverable only with respect to the employees who reviewed the claims. *See Parish*, 2013 WL 3974534, at *4.

This Court finds that the CVs of the claims personnel and the performance evaluations of the claims personnel is properly discoverable under *Crosby*. However, these discovery requests are limited to those employees who reviewed the Plaintiff's claims in this case. As such, the motion to compel with regards to the CVs and performance evaluations of those specific individual who reviewed the Plaintiff's long-term disability claim and appeal are granted. The Court will limit the temporal scope of this discovery for the past three years because no limit was indicated in the request itself.

As agreed, the Court also orders MetLife to provide the CVs of Reva Klein and Anna Gilbertson, and also orders to the extent that performance evaluations of Reva Klein are available MetLife shall also produce a copy of those with the temporal limit of production of performance evaluations from the past three years.

### 3. **RFP No. 3**

Plaintiff's RFP No. 3 asks for the employment contracts of Reva Klein, M.D. and any other medical provider MetLife relied upon in most recently denying Plaintiff's claim and appeal.

MetLife has agreed to produce the employment contracts of Reva Klein as well as Anna Gilbertson. As this has been agreed, the Court orders MetLife to produce those contracts.

### 4. **RFP Nos. 6 and 9**

Plaintiff's RFP Nos. 6 and 9 included in the joint letter to the Court revise and merge Plaintiff's earlier requests. The Plaintiff requests copies of sections of the internal protocol or

11

claims manual that discusses how MetLife administers its 24-month limitation that is at issue in the current dispute. Plaintiff also requests internal documentation that instructs MetLife on the use of in-house versus outside physicians.

MetLife states in response that to the extent the documentation exists it will be produced subject to a protective order. Therefore, the Court orders that MetLife produce this documentation to the extent that it exists and limits the production to the version used at the time of the determination of Plaintiff's claims. The Court also orders that the parties enter into a joint protective order. The Court notes that a sample/proposed protective order is provided on the Court's webpage and the use of that may help expedite the discovery process.

### 5. RFP No. 10 and 13

While not grouped together in the letter sent to the Court, RFPs Nos. 10 and 13 seek similar information. Plaintiff's RFP No. 10 seeks the policies and procedures regarding the hiring and firing of employees, the promotion and demotion of employees, and compensation, bonuses, and awards for employees or independent contractors in MetLife's most recent denial of Plaintiff's claim and the denial of the appeal (including whether any employees receive company stock as compensation). RFP No. 13 requests the rate of pay of claims personnel and medical professionals who were involved in the most recent denial of plaintiff's claims and appeal, including bonuses, awards, or other indices of recognition.

MetLife objects to this request in-whole on the grounds that it is not relevant, is personal, and confidential and seeks information about persons that are not parties to the lawsuit. However, MetLife agrees to produce that information as to Reva Klein.

In *Parish* the court held that information sought regarding compensation schemes, bonus structurers, and other pay incentives was required to be produced only as to "company-wide

12

policies and not of individual compensation records." *Parish*, 2013 WL 3974534, at *4 (citing *Crider v. Life Ins. Co. of N. Am.*, No. 07-331, 2008 WL 239659 (W.D. Ky. Jan 29, 2008) (Holding that information regarding compensation schemes, bonus structures and other pay incentives are discoverable with respect to companywide compensation, bonus performance evaluation standards, but not with respect to individual compensation records)).

The Court therefore finds that MetLife is required to produce the information requested in RFP Nos. 10 and 13 with respect to the company wide policies and not the individual compensation records of any claims personnel. However, MetLife is also ordered to produce such information as to Reva Klein as that was agreed to by MetLife in response to RFP No. 13.

### 6. RFP No. 14 and 17

Revised RFP Nos. 14 and 17 both seek reports, investigations, and complaints about MetLife's claims handling practices. RFP No. 14 seeks reports or investigations of MetLife's claims handling by the Insurance Commissioner or regulatory authority within the past ten years. RFP No. 17seeks copies of all complaints filed with the state insurance departments in which any claimants complain of MetLife's conduct in regards to the handling of long-term disability claims.

MetLife objected to the production of this information because it is not relevant or proportional to the issues in this lawsuit. In reply, the Plaintiff states the information is relevant because a history of biased claims administration justifies giving a conflict of interest more weight.

In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), the U.S. Supreme Court stated that a history of biased claims administration can show that a conflict of interest is more important or helps to suggest that the conflict of interest affected benefits decisions. Clearly a history of biased claims administration is relevant. However, in both cases the request by the Plaintiff is not proportional to the needs of the case.

In RFP No. 14 the Plaintiff seeks all documents relating to any reports or investigations of MetLife's claims handling practices by any insurance commissioner for the past ten years. Just because reports or investigations regarding claims handling may exist does not indicate whether biased claims administration actually occurred, further the ten year temporal scope is much too broad.

RFP No. 17 seeks all complaints filed with the state insurance department in which claimants complain of MetLife's conduct with regards to its handling of long-term disability claims. This is clearly not proportional to the needs of the case. Just because a complaint exists does not correlate to whether the claims administration was biased. It could just as easily and if not more likely correlate to claimaints who were dissatisfied with the determination they received regarding their long-terms disability claims.

The Court therefore denies the motion to compel with respect to RFP Nos. 14 and 17, and grants the motion for protective order with respect to these RFPs.

### 7. <u>RFP No. 15</u>

Plaintiff's revised RFP No. 15 seeks contracts with third-party intermediaries who arranged any peer-review upon which MetLife relied in its most recent denial of Plaintiff's claims and the denial of the appeal.

MetLife states that there was no third-party intermediary that MetLife used to arrange the relevant peer review of Reva Klein, and MetLife will produce a copy of the contract with the third-party intermediary who arranged a peer review of Anna Gilbertson. Plaintiff has no objection to this response and as such MetLife is ordered to produce the contract with the third-party intermediary who arranged the peer review for Anna Gilbertson.

### 8. RFP No. 20

Plaintiff's RFP No. 20 seeks all communications between Reva Klein and MetLife or between a third-party and Reva Klein or any other medical reviewer upon which MetLife relied when denying the Plaintiff's most recent claim and appeal.

MetLife responds by stating that all such communications are within the administrative record. As such, the Court finds that the response to RFP No. 20 is sufficient.

### B. Interrogatories

The Plaintiff originally propounded fourteen Interrogatories on the Defendant in this case. However, after the parties were ordered to work cooperatively to address the discovery issues a number of revisions and changes to the original interrogatories were made as well as eliminating a number of previously propounded interrogatories.

### 1. Interrogatories Nos. 1, 2, and 10

The Plaintiff, in revising his interrogatories has eliminated Nos. 1, 2, and 10. Therefore, the original motions with respect to these interrogatories is now moot.

### 2. Interrogatories No. 3 and 6

Plaintiff's Interrogatories Nos. 3 and 6 request the rate of pay, bonuses, award of other indices of recognition for job performance for all employees involved in the denial and appeal of Plaintiff's most recent claim as well as the method of compensation of each claims personnel and medical reviewed involved. MetLife objects to the production of this information asserting relevancy, confidentiality, and the personal nature of the request. As ordered previously in RFP Nos. 10 and 13, MetLife is required to answer this interrogatory with respect to companywide policies and procedures and not the individual compensation records of any claims personnel.

### 3. Interrogatories Nos. 4 and 5

Interrogatory No. 4 asks whether Reva Klein is an employee or independent Contractor of MetLife and Interrogatory No. 5 asks for the details in the method by which Reva Klein is paid by MetLife. MetLife has agreed to produce this information and therefore the Court will order that the information be produced.

### 4. Interrogatories No. 7 and 8

Interrogatories Nos. 7 and 8 have been revised and merged and seek the number of times the medical reviewer involved in MetLife's most recent denial of Plaintiff's claim and appeal have conducted an IME or other medical review, the gross monetary compensation, and the number of times the peer reviewers opinion supported the denial of disability benefits for the past five years.

MetLife responds that it will provide the number of times the medical reviewers have conducted an IME or other medical review of disability claims as well as the gross compensation of Reva Klein and Anna Gilbertson for three years. However, MetLife says it does not have information as to the number of times a peer review finding supported the denial of claims.

Federal Rule of Civil Procedure 26(g) states that a person is required to conduct a "reasonable inquiry" with regards to discovery disclosures, responses, and objections. "If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." *In re Katrina Canal Breaches Consolidated Litig.*, 2007 WL 1959193, at *4 (E.D. La. June 27, 2007). To the extent that MetLife states it does not have the information responsive to the interrogatory, MetLife is ordered to conduct a reasonable inquiry into obtaining that information and if no answer can be given set forth in detail the efforts made to obtain that information.

This Court finds that the five year temporal limitation is too extensive. The instant litigation was filed in 2015, making three years from the current date a reasonable limit to permit the discovery of this information.

MetLife is ordered to respond to what they agreed to in the joint letter for the past three years, not the past five years. In addition, MetLife is required to conduct a reasonable inquiry into the number of times a peer review finding supported the denial of claims for the past three years and if that information is not available detail the efforts made to obtain that information.

### 5. Interrogatory No. 9

Interrogatory No. 9 asks MetLife to identify the portions of MetLife's claims manual or other internal protocol that discusses how claims personnel are required to handle the 24-month limitation that is the subject of this dispute as well as the documentation that discusses when to use in-house versus outside physicians.

MetLife has agreed to produce such information if it exists and therefore the Court orders that MetLife provide such information to the extent that it exists.

### 6. Interrogatories No. 11, 12, and 13

Revised Interrogatories No. 11, 12, and 13 have been merged and seek the number of times in the past five years MetLife has hired any peer review company that arranged a peer review of any medical professional that MetLife relied on when denying Plaintiff's most recent claim, the gross monetary compensation paid to such third-party company who arranged such reviews, and the number of times that peer review finding supported MetLife's decision to deny benefits.

MetLife has agreed to produce the number of times a peer review company has arranged a peer review by Anna Gilbertson and the gross monetary compensation paid to the reviewer.

However, MetLife states that they do not have the information as to the number of times the peer reviewer supported MetLife's claims decision.

This Court finds that the five year temporal limitation is too extensive. The instant litigation was filed in 2015, making three years from the current date a reasonable limit to the discovery of this information.

MetLife is ordered to respond to what they agreed to in the joint letter for the past three years, not the past five years. In addition, MetLife is required to conduct a reasonable inquiry into the number of times a peer review finding supported the denial of claims for the past three years and if that information is not available detail the efforts made to obtain that information.

### 7. <u>Interrogatory No. 14</u>

Plaintiff's Interrogatory No. 14 asks for all database, software, and/or sources of documents from which the documents that compromise the administrative record originate. Plaintiff asks for the name of the databases and if there was information pertaining to the claim not included in the administrative record, such as communications, then identify and produce such documents and explain where the information is housed.

MetLife objected on the grounds that the information sought is proprietary and is no proportional or relevant to the case and that all information pertaining to the Plaintiff's claim has already been included in the administrative record. Plaintiff replies to this objection by stating it's hard to identify if the administrative record is complete without knowing how MetLife houses its internal information.

*Crosby* allows discovery into the completeness of the administrative record, however, Interrogatory No. 14 is the only interrogatory that addresses the completeness of the administrative record. Further, on October 11, 2017, the Plaintiff stated in a statement regarding the completeness

of the administrative record that, "Metropolitan Life Insurance Company has provided Plaintiff with the purported Administrative Record, which contains 1966 pages of documents that appear to make up the complete administrative record." R. Doc. 34.

However, in Plaintiff's motion to compel he states "[t]he record provided to Plaintiff's counsel does not appear to include all correspondence between MetLife and Dr. Klein or between Dr. Klein and a third party reviewing company." R. Doc. 40-1, p. 16. While *Crosby* does allow for discovery into the completeness of the administrative record, the Fifth Circuit clearly noted that a court should monitor discovery closely and be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b).

The Plaintiff has failed to indicate what led him to believe that the administrative record is incomplete and what led him to believe there are additional correspondences that should have been included in the administrative record. The Court will not require or allow a fishing expedition into the defendant's databases and software as this is clearly not proportional to the needs of the case. Further, the Plaintiff had previously agreed the administrative record appeared complete, yet has provided nothing to this Court to explain why that is no longer the case. As such, the motion to compel with respect to Interrogatory No. 14 is denied.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the **Plaintiff's Motion to Compel Discovery (R. Doc. 40)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the **Defendant's Motion for Protective Order and F.R.C.P. Rule 26(c)(1) Certification** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** with respect to Request for Production Nos. 1, 7, 8, 12, 16, 18, and 19, and Interrogatories Nos. 1, 2, and 10, both motions are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that with respect to Request for Production Nos. 2, 4, 5, 6, 9, 10, and 11, and Interrogatories Nos. 3, 6, 7, 8, 10, 11, 12, and 13, both the motion to compel and motion for protective order are **GRANTED IN PART** and **DENIED IN PART** as stated in the body of the order.

**IT IS FURTHER ORDERED** that with respect to Request for Production Nos. 14, 17, and 20, and Interrogatory No. 20, Defendant's motion for protective order is **GRANTED**.

**IT IS FURTHER ORDERED** that with respect to Request for Production Nos. 3 and 15, and Interrogatories Nos. 4, 5, and 9, MetLife is required to respond as agreed to by both parties.

**IT IS FURTHER ORDERED** that the parties will enter into a joint protective order in this case seven (7) days from the signing of this order.

**IT IS FURTHER ORDERED** that MetLife has fourteen (14) days from the signing of this order to produce the information and respond the interrogatories as stated in this order.

New Orleans, Louisiana, this 21th day of December 2017.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**